**UNITED STATES of America,**
**Appellant,**

v.

**R. L. BYERS, Jr., Insurance Company of North America of Philadelphia, Pa., and Traders & General Insurance Company, Appellees.**

**No. 5071.**

United States Court of Appeals
Tenth Circuit.

Aug. 4, 1955.

Richard M. Markus, Atty., Dept. of Justice, Washington, D. C. (Warren E. Burger, Asst. Atty. Gen., Paul F. Larrazolo, U. S. Atty., Albuquerque, N. M. and Samuel D. Slade, Atty., Dept. of Justice, Washington, D. C., on the brief), for appellant.

J. Benson Newell, La Cruces, N. M., for appellees.

Before PHILLIPS, Chief Judge, and HUXMAN and PICKETT, Circuit Judges.

HUXMAN, Circuit Judge.

R. L. Byers, Jr., the owner of two transport trucks, the Insurance Company of North America and Traders and General Insurance Company, his insurance carriers, brought this action against the United States to recover damages for injuries to two trucks and for the amount paid to the driver of one of the trucks as Workmen's Compensation, growing out of a highway accident. From a judgment in favor of the plaintiffs the United States has appealed.

The facts necessary to consider are substantially as follows: At the place of the accident, U. S. Highway No. 70, on which the accident occurred, runs generally east and west. At the point where the accident occurred a road leading to White Sands Proving Grounds enters Highway 70 at approximately right angles. From the west, Highway No. 70 comes through the mountains. About 8 miles west of the intersection of the two highways is the top of the mountain pass, called the Organ Pass. From the top of this pass to the intersection of these two highways the road descends at a sharp grade.

On February 20, 1953, the military forces of the United States were conducting guided missile experiments at White Sands Proving Grounds. To protect the public using Highway 70, the Army established a road block about three miles west of the entrance of the highway to White Sands Proving Grounds. The road block was approved by the New Mexico State Highway Department. This road block was designated Station Red. Notice of Station Red was given to approaching east-bound traffic by temporary metal signs placed in the center of the highway from ½ to 1½ miles to the west of the road block.

About the time this road block was lifted and the temporary signs collected, a second road block called Station Blue of east-bound traffic was established slightly to the east of the intersection of Highway 70 with the access road from the Proving Grounds. The road block was approximately 3 miles east of Station Red. The driver of a radio truck belonging to the Government who established this second road block was alone at the time and was unable to have temporary warning road markers placed on the highway to the west, as was done when Station Blue was established. He, himself, stopped the first few cars that came along the highway from the west by flagging them down. He then parked his truck so as to block the right lane of the highway coming from the west. Shortly thereafter two military per-

sonnel arrived and went directly to work westward along Highway 70 to signal oncoming traffic. A few minutes later two other military personnel who had been riding in a light truck assisted in the direction of such traffic. At that time a large number of vehicles including a large truck were stopped behind the blocking radio truck.

One of the military personnel was standing 9/10 of a mile west of the road block. Six permanent state highway signs located west of the road block warned motorists of the dangerous intersection at which the second road block was established and of the dangerous downgrade of the highway. The closest of these signs looking westward from the intersection indicated that Highway 70 veered to the left. The next sign nearly 1/4 of a mile from the intersection was a caution sign reading "Side Road" and indicating a speed zone of "25 M.P.H." Beyond this sign was a large diagrammatic sign showing the intersection and bearing the inscription "Dangerous Intersection 1,000 ft." Further west was a warning sign on which was painted "Caution Junction 1/2 Mile Ahead" and finally at the top of the mountain approximately 8 miles away was an Army sign warning military trucks of two tons to descend the long downgrade in second gear. The Highway Department had also placed a "Hill" caution sign on the top of the mountain pass.

The first of the two trucks owned by Byers was being driven by an eighteen-year-old young man named Ray LeRoy Ferguson. He stopped at the summit of the pass to inspect and adjust the air brakes on his truck. Starting down the grade he put the engine into second gear. Each engine had five gears but each included an overdrive and an underdrive position, giving the engine ten different gears. As his truck progressed down the hill, its speed increased, thus increasing the revolutions of the motor. Since the driver believed that the motor would

not withstand a speed greater than 2,250 revolutions per minute, he shifted to third gear as the motor approached that ceiling. As the speed of the truck continued to increase, he shifted to higher gears until he had shifted to eighth or ninth gear. By doing this, he was able to reduce the speed of the motor, but the braking effect of the motor was greatly decreased and the truck continued to gain speed as it continued down the incline. It is quite clear from the evidence that the driver used the brakes all the way down. As a result of his speed, the weight of the truck, and the fact that the continued use of the brakes had caused them to become very hot, they had lost their effectiveness by the time the truck had reached a point about 9/10 of a mile from the intersection where the second road block was established. At that time the truck was travelling at a speed of approximately 60 miles an hour. From that point on he had a clear and unobstructed view of the road block, but because of the speed at which he was travelling and the fact that the brakes had practically lost their effectiveness from continued use, he was unable to stop within that distance. However, by driving partially on the left shoulder of the highway, he was able to pass the radio truck on the left, colliding only slightly with its front bumper. He continued down the road 3 1/10 miles before he brought his truck to a stop.

The parties are not in agreement as to whether he could have stopped his truck in a less distance than the 3 1/10 miles. Ferguson testified that coming down the hill "as you did, with your brakes hot as they were, * * * it would take two or three miles" to stop. Gene Goolsby, the driver of the other truck, testified that coming down the hill as he was, nearly 50 miles an hour, and with the brakes warm, partially hot, he thought he could have stopped his vehicle in "from one to two miles." This also seems to have been the view of the trial court.[1] But whether the drivers

1. In its opinion it states, "The Court has not failed to consider the antithetical argument urged on behalf of the government that although due care on its behalf

could or could not have stopped within a lesser distance, coming down the pass as they admittedly did, is not decisive of the case for reasons hereinafter stated, and it is, therefore, not necessary to determine whether the drivers of the trucks could have stopped their trucks in less than 3�0/10 miles.

The second truck driven by Gene Goolsby came down the pass in much the same way as the first truck and the same precautions were taken at the top of the pass as were taken by the first driver, and all the steps in its operation need not be repeated. Goolsby testified that he was driving at a speed of approximately 50 miles an hour when he noticed the road block. He was driving slightly in excess of 50 miles per hour but by shifting from ninth to seventh gear he was able to reduce the speed to slightly less than 50 miles per hour. Between the time the first truck passed the road block and the second truck approached, a Government pick-up truck had become stalled accidentally in the left lane of the highway, thus preventing the second truck from passing without a collision, as the first truck had done. In order to avoid a crash with this truck which might result in serious personal injury or possible death, the driver with commendable courage crashed the truck into the bank with personal injuries to himself and practically a total loss of the truck. Byers and his insurance carriers brought this action to recover the damages to the truck and the amount paid to the injured driver as Workmen's Compensation. The Government filed a general denial and a counterclaim seeking recovery for its damages, on the ground of negligence of the plaintiffs and its drivers. Judgment was entered for the plaintiffs and this appeal followed.

The trial court found that the United States was guilty of negligence in failing to set out markers warning approaching traffic of established road block Station Blue; that the driver of plaintiff's truck which was travelling at a speed of 50 miles per hour was not guilty of negligence; that while the driver of the truck which was going at a rate of 60 miles per hour was guilty of negligence, such negligence was not a proximate cause of the collision "for the reason that the accident would have happened even if the first tractor-trailer had not been proceeding at an excessive rate of speed." The court concluded that if the Government had "posted warning signs from 1½ to 2 miles west of the road block at Station Blue, as ordinary care in this situation demanded, this second unit (the one travelling 50 miles per hour) could have stopped and avoided the accident."

For the purpose of this opinion, it will be assumed that the Government was guilty of negligence in not placing warning signs of road block Blue as it had done at road block Red. We, however, think that the conclusion is inescapable that plaintiff also was guilty of contributory negligence which proximately contributed to the accident.

We do not understand that one may under all conditions and circumstances drive at the maximum speed limit authorized by law and be free from negligence. The basic principle of careful and proper driving with respect to all vehicles is that one must drive at such speed that he has his vehicle under control at all times and can stop within a reasonable distance, should a dangerous condition be encountered. This is also

---

required the posting of warning signs that even so such an omission was not the proximate cause of the accident in question for the reason that even if warning signs had been posted 1½ to 2 miles from the road block, the accident still would have occurred for the reason that the first tractor-trailer in travelling

at 60 miles per hour could not have avoided a collision with the radio truck, had it been given a warning 1½ to 2 miles from Station Blue; such factual argument is corroborated by this Court's own finding that it took the first tractor-trailer a distance of more than 3½ miles to stop."

the law of New Mexico.[2] We think the court erred in concluding that the New Mexico Statute established a maximum speed limit of 50 miles per hour for trucks in all cases. The New Mexico Statute provides "No truck shall be operated at a speed greater than the *posted* speed limit for any highway or section thereof."[3] Almost a quarter of a mile from the intersection was a sign which had been posted by the New Mexico authorities reading "Side Road" and fixing a speed limit of "25 M.P.H." Thus under the New Mexico law the drivers of these trucks were required to reduce speed to 25 miles per hour. This they failed to do. In fact, because of the speed at which they were going and because their brakes had become useless by excessive use, they could not comply with this requirement of the law. Failure to reduce speed to this statutory requirement constituted negligence per se under the New Mexico law.[4] Careful and prudent operation of motor vehicles requires that one must at all times keep the vehicle under control.[5]

These drivers were not strangers to this road. They had driven trucks over the road before. All the way down from the very top were warning signs advising them of the hazardous driving conditions ahead. Vincent Enright, a Sergeant in the Army, testified that after the accident he made tests of visibility of this highway in an automobile; that he could see the intersection at one point from 2½ miles away; that on the day he and another soldier made the test there happened to be a truck parked near the intersection where this accident occurred which was visible from 2½ miles away; that from a point two miles away the road block remained visible; and that from 9/10 of a mile away you could plainly and continuously see the intersection.

The conclusion is inescapable that because of the speed at which these trucks were being operated the brakes had become useless and ineffective and that because of such speed the motors could not be shifted to a lower gear to provide sufficient braking power to bring them to a stop within a reasonable distance, and that this contributed to the smash-up which occurred.

The contention is made that because of the tremendous weight of these trucks and because of the construction of the motors the drivers were unable to operate them in a gear sufficiently low to maintain a speed at which they could be brought to a stop within a reasonable distance and that, therefore, they were not guilty of negligence. It is not necessary to the decision of this case to resolve this question. If such be the case, the drivers would perhaps not be guilty of negligence. In that event, the appellee, Byers, the owner of the trucks, would then be guilty of the grossest kind of negligence in placing such dangerous instrumentalities upon the highway which could be operated only in violation of all reasonable laws and statutory regulations with respect to the operation of motor vehicles.

The Government has not cross-appealed from the decision of the trial court denying it relief under its counterclaim and that question is, therefore, not before the court for adjudication.

■ It is our conclusion that the undisputed evidence establishes as a matter of law that appellee's trucks were being operated in a negligent and dan-

2. § 64–18–1 of the New Mexico Statutes 1953 in part provides: "No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing."

3. New Mexico Stat.1941, § 68–504, now § 64–18–1, 1953 Code.

4. 1941 Comp. § 68–501(*l*), 68–504(b); Clay v. Texas-Arizona Motor Freight, Inc., 49 N.M. 157, 159 P.2d 317.

5. Crocker v. Johnston, 43 N.M. 469, 95 P.2d 214; 1941 Comp. § 68–504, Laws of New Mexico, Now 64–18–1, 1953 Code.

gerous manner which substantially contributed to the loss for which recovery was sought. Accordingly, the judgment is reversed and the cause is remanded with directions to enter judgment for the Government.